IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN MAGEE, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:24-CV-833-E-BK |
| | § | |
| VARSITY BRANDS HOLDING CO., | § | |
| INC. ET AL., | § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the undersigned United States magistrate judge for pretrial management, including the issuance of findings and a recommended disposition when appropriate. Before the Court is *Varsity Brand Holding Co. LLC, Adam Blumenfeld, and Jerry Garcia's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice*, Doc. 42. As detailed here, the motion should be **GRANTED**.

## I. BACKGROUND

This lawsuit is the third in a trilogy of actions Plaintiff has filed alleging trademark infringement of "Hooplife" apparel. Doc. 42 at 8-12. Here, Plaintiff Steven Magee, proceeding *pro se*, alleges Defendants Varsity Brands Holding Co., Inc. ("Varsity"), Adam Blumenfeld ("Blumenfeld"), and Gerardo "Jerry" Garcia ("Garcia") (collectively, "Defendants") violated Plaintiff's trademark on Hooplife apparel by selling products reflecting Hooplife's brand name and image. Doc. 39.

Plaintiff's claims stem from a settlement agreement (the "Agreement") negotiated and executed between Plaintiff and BSN Sports, LLC ("BSN"), in or about November 2022, to

resolve a previous dispute.  Doc. 39 at 129, 148; Doc. 42 at 8-9.  Plaintiff alleges that despite

entering into the Agreement, Varsity, doing business as BSN, continues to infringe upon

Plaintiff's trademark rights in Hooplife.  Doc. 39 at 81, 112.  Accordingly, Plaintiff seeks to hold

Varsity liable through BSN by asserting claims for, *inter alia*, breach of contract (Counts I-V),

fraudulent misrepresentation and fraudulent inducement (Counts VI-VII), trademark

infringement under federal and state law (Counts VIII-XII), and unfair competition (Count XIII).

Doc. 39 at 146-176.

Plaintiff also asserts claims against certain employees of Varsity for their purported roles

in the continued infringement on Plaintiff's trademark.  Doc. 39 at 177-82.  Against Blumenfeld,

Varsity's chief executive officer, Plaintiff claims fraudulent misrepresentation and fraudulent

inducement (Count I), trademark infringement (Count II), contributory trademark infringement

(Count III), and unfair competition (Count IV).  Doc. 39 at 177-80.  Against Garcia, Varsity and

BSN's Senior Vice President and Deputy General Counsel, Plaintiff brings a single claim of

fraudulent inducement (Count I).  Doc. 39 at 181-82.  In sum, Plaintiff theorizes that Blumenfeld

and Garcia are liable for the various claims he asserts against them because of their involvement

in procuring the Agreement.  Doc. 39 at 177-82.

Defendants now move to dismiss *Plaintiff's Amended Complaint*, Doc. 39, for failure to

state a claim.  Doc. 42.  Plaintiff timely filed his response, Doc. 43, and Defendants timely filed a

reply.  Doc. 44.  Thus, the motion is ripe for determination.

## II. APPLICABLE LAW

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does

not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  In order to overcome a Rule 12(b)(6) motion, a plaintiff's

complaint should "contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (cleaned up).  Moreover, the complaint should not simply contain conclusory allegations but must be pled with a certain level of factual specificity.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Put differently, a court must be able to reasonably infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  But "a formulaic recitation of the elements of a cause of action will not do . . . ," and factual allegations must accompany legal conclusions. *Id.* (quoting *Twombly*, 550 U.S. at 555).  When reviewing the complaint, "the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (cleaned up).

## III. ANALYSIS

### A. Plaintiff's Breach of Contract Claims Against Varsity (Counts I-V) Fail Because Varsity Is Not a Party to the Agreement.

#### 1. *Plaintiff's Allegations Do Not Support Piercing Varsity's Corporate Veil Under an Alter Ego Theory.*

Plaintiff asserts five claims of breach of contract against Varsity for BSN's alleged continued infringement upon Plaintiff's Hooplife trademark after the Agreement's execution. Doc. 39 at 146-56.  Instead of asserting his claims directly against BSN, however, Plaintiff identifies Varsity as the legally responsible party, asserting an alter ego theory to pierce Varsity's corporate veil.  *See* Doc. 39 at 147 (alleging that BSN is merely an extension of Varsity and is Varsity's alter ego).

"Under Texas law, a party generally must be a party to a contract before it can be held liable for a breach of the contract." *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (cleaned up).[1] But traditional principles of state law allow a contract to be enforced by or against nonparties through piercing the corporate veil or alter ego theory. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins.*, 921 F.3d 522, 531 (5th Cir. 2019). However, "courts do not lightly or routinely pierce the corporate veil." *USHealth Grp., Inc. v. South*, 636 F. App'x 194, 202 (5th Cir. 2015).

"Under Texas law the alter ego doctrine allows the imposition of liability on a corporation for the acts of another corporation when the subject corporation is organized or operated as a mere tool or business conduit." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) (citation omitted). The doctrine applies "when there is such unity between the parent corporation and its subsidiary that the separateness of the two corporations has ceased and holding only the subsidiary corporation liable would result in injustice." *Id.* (citation omitted); *see USHealth Grp., Inc.*, 636 F. App'x at 201-02 ("Under the alter ego doctrine, a corporation may be bound by an agreement entered into by its subsidiary . . . when their conduct demonstrates a virtual abandonment of separateness.") (cleaned up). This theory of liability involves two considerations: (1) the relationship between the two entities, and (2) "whether the entities' use of limited liability was illegitimate." *SSP Partners v. Gladstrong Invs. (USA) Corp.*,

---

[1] Although Plaintiff does not include Varsity's state of incorporation in his amended complaint, the parties do not seem to dispute that Texas law applies to the determination of Plaintiff's veil piercing theories. *See* Doc. 39 at 6 (stating that Varsity is headquartered in Texas); Doc. 42, *passim* (citing to Texas law); *Proxi Healthcare Staffing LLC v. Curative Talent, LLC*, No. 3:22-CV-2553-S, 2024 WL 779610, at *3 (N.D. Tex. Feb. 26, 2024) (Scholer, J.) ("[W]hether a corporation . . . or individual may be held liable pursuant to a veil-piercing theory is determined by the law of the state in which the entity is organized.") (citing, *inter alia*, *Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 203 (5th Cir. 1995)).

275 S.W.3d 444, 455 (Tex. 2008).

As to the first prong, Plaintiff posits that alter ego liability is appropriate because BSN is a mere "extension" of Varsity, and the entities lack separateness. Doc. 39 at 91-109. In support of his position, Plaintiff argues that a laundry list of considerations suggest that the two entities lack separateness. Doc. 39 at 83-87. For example: (1) Varsity "maintains substantial control" over BSN's operations; (2) BSN is a "division" of Varsity, as compared to a separate company; (3) Varsity and BSN share certain employees, such as Blumenfeld and Garcia, and employment practices; (4) Varsity "does business as" BSN; (5) Varsity and BSN share certain policies, websites, and marketing materials; (6) Varsity owns 100% of BSN stock; and (7) Varsity and BSN "share transactions." Doc. 39 at 83-87, 91-109. Plaintiff's repetitive, yet factually bare allegations—for which he provides little to no credible factual support—do not adequately demonstrate "the degree of assimilation necessary for alter ego liability." *See, e.g.*, *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) ("We have noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations."); *Proxi Healthcare Staffing LLC*, 2024 WL 779610, at *4 (finding that plaintiff's laundry list of conclusory allegations did not satisfy first prong of alter ego analysis); *SSP Partners*, 275 S.W.3d at 455 ("We have never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances."). And while Plaintiff lists numerous factors relevant to the alter ego analysis, there is no indication that Plaintiff's contentions are anything more than "a formulaic recitation of the elements of a cause of action [which] will not do." *Twombly*, 550 U.S. at 555. This failure alone is enough to defeat Plaintiff's attempt to hold Defendants liable via an alter ego theory.

Even if Plaintiff had established a lack of separateness between Varsity and BSN, however, Plaintiff has not adequately alleged that the purported relationship was illegitimate. *See Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 424 (5th Cir. 2014) (stating that illegitimate use of the corporate form includes perpetuating a fraud, evading an existing obligation, achieving or perpetuating a monopoly, circumventing a statute, protecting a crime, or justifying wrong). Plaintiff alleges, in a purely conclusory fashion, that Varsity used BSN "as a shield against liability" or "subterfuge of illegal transaction(s)," and therefore, "an unjust or inequitable result" would occur "if the corporate entity is not disregarded." Doc. 39 at 84-85, 88. The only "fact" Plaintiff proffers in support of his allegations is that Varsity used BSN to wrongfully enter into the Agreement. Doc. 39 at 87. This allegation is likewise conclusory and unsupported, thus insufficient to establish an illegitimate relationship. *See Proxi Healthcare Staffing LLC*, 2024 WL 779610, at *4 (holding that the plaintiff's conclusory allegations regarding the defendant's illegitimate use of the corporate form were insufficient to justify piercing the corporate veil).

For the foregoing reasons, the Court concludes Plaintiff has not plausibly alleged that Varsity can be held liable for the alleged actions of BSN under an alter ego theory.[2]

### 2. *Plaintiff's Other Theories of Liability for the Purported Agreement Breaches Likewise Cannot Survive Defendants' Rule 12(b)(6) Motion to Dismiss.*

Relying on the same facts undergirding his alter ego theory of liability, Plaintiff also contends Varsity is liable for BSN's purported breaches of the Agreement under (1) a single

---

[2] As the Court finds that Plaintiff's alter ego allegations do not even meet the standards of Rule 12(b)(6), it does not reach the issue of whether Plaintiff's alter ego allegations meet the standards of Rule 9(b). *See Martagon v. Murillo*, No. 18-CV-2605-BK, 2019 WL 3731900, at *3 (N.D. Tex. Aug. 8, 2019) (Toliver, J.) (applying the heightened pleading standard of Rule 9(b) to claim of perpetration of fraud by alter ego).

business enterprise theory and (2) an agency theory. Doc. 39 at 82-91. Both attempts fail.

Plaintiff's attempt to establish Varsity's liability under the "single business enterprise" theory is unavailing. Doc. 39 at 82-88; *see also Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e) (explaining that the single business enterprise theory applies "when corporations are not operated as separate entities but rather integrate their resources to achieve a common business purpose"), *abrogated on other grounds by SSP Partners*, 275 S.W.3d at 456. This theory does not support "the imposition of one corporation's obligations on another." *SSP Partners*, 275 S.W.3d at 456; *see Clapper v. Am. Realty Invs., Inc.*, No. 3:14-CV-2970-D, 2016 WL 302313, at *6 n.10 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.) (collecting cases recognizing that the Texas Supreme Court has consistently rejected the single business enterprise theory).

Plaintiff's assertion of Varsity's liability under an "agency theory" likewise fails. Doc. 39 at 88-91. Again, Plaintiff asserts the same factual bases as under his alter ego theory, however, "the concepts of alter ego and agency invoke different legal standards." *Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 264 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Without any factual support, Plaintiff makes conclusory allegations that BSN is the agent of Varsity and, as such, is a party to the Agreement. Doc. 39 at 92, 99, 119-22, 124-25, 128. Even liberally construing the amended complaint, Plaintiff's factual allegations do not support any "agency theory" of liability. *See Richard Nugent & CAO, Inc.*, 543 S.W.3d at 264-65 ("[A]n agency relationship involves two distinct individuals or entities, with one (the agent) acting on behalf of the other (the principal)."); *In re Parkcentral Global Litig.*, No. 3:09-CV-765-M, 2010 WL 3119403, at *10 (N.D. Tex. Aug. 5, 2010) (Lynn, J.) (dismissing claims

under a vicarious liability theory based on agency and respondent superior where the "allegations [we]re conclusory and lack[ed] specificity" and declining to pierce the veil).

For all of the foregoing reasons, Plaintiff has failed to state viable claims for breach of contract against Varsity.  Thus, the motion to dismiss should be granted as to those claims.

### B. Plaintiff Failed to Plead His Claims for Fraudulent Misrepresentation and Fraudulent Inducement Against Varsity (Counts VI-VII), Blumenfeld (Count I), and Garcia (Count I) With Particularity.

Defendants argue two bases to dismiss Plaintiff's fraud-based claims: (1) Plaintiff's fraud-based claims are barred by the economic loss rule, and (2) dismissal is warranted because Plaintiff did not plead his fraud-based claims with the requisite particularity required by Rule 9(b).  Doc. 42 at 21-23.  While Defendants' argument regarding the economic loss rule fails, their second argument prevails.

#### 1. Plaintiff's Fraud-Based Claims Are Not Barred by the Economic Loss Rule.

Defendants incorrectly contend that Plaintiff's claims for fraudulent inducement and fraudulent misrepresentation are barred by the economic loss rule.  Doc. 42 at 21-22.  "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy."  *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted).  However, "[s]everal courts in the Fifth Circuit have held that this rule does not apply to fraud claims."  *Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:22-CV-2805-L-BH, 2023 WL 5022287, at *6 (N.D. Tex. July 21, 2023) (Ramirez, J.) (collecting cases and holding that economic loss doctrine did not bar fraudulent misrepresentation claim), *adopted by* 2023 WL 5022681 (Aug. 7, 2023) (Lindsay, J.); *see Container Store, Inc. v. Fortna Inc.*, No. 3:20-CV-2893-B, 2021 WL 1250334, at *5 (N.D. Tex.

Apr. 5, 2021) (Boyle, J.) ("Under Texas law, the economic-loss rule does not bar fraudulent-inducement claims."). Accordingly, the economic loss rule does not bar Plaintiff's fraudulent misrepresentation and fraudulent inducement claims here.

### 2. *Plaintiff Failed to Plead His Fraudulent Misrepresentation and Fraudulent Inducement Claims with Particularity as Required by Rule 9(b).*

In the alternative, Defendants correctly contend that Plaintiff has not alleged sufficient, particular facts to support his fraud-based claims against the Defendants. Doc. 42 at 22-23.

To satisfy Rule 9(b) regarding his fraudulent misrepresentation claims, Plaintiff must allege sufficient facts to show:

> (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.

*Ison-Newsome*, 2023 WL 5022287, at *6 (citing *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-22 (5th Cir. 2010)). Similarly, "a fraudulent inducement claim requires: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Container Store, Inc.*, 2021 WL 1250334, at *5 (cleaned up). "Because fraudulent inducement arises only in the context of a contract, the existence of a contract is also an essential part of its proof." *Id.* (cleaned up).

When alleging these elements, a plaintiff is subject to the heightened pleading requirements of Rule 9(b) and must specify the who, what, when, where, and how of the statements at issue. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). "A

dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim." *Scott v. Wollney*, No. 3:20-CV-2825-M-BH, 2021 WL 4851852, at *7 (N.D. Tex. Sept. 10, 2021) (Ramirez, J.), *adopted by* 2021 WL 4845779 (Lynn, J.).

In his amended complaint, Plaintiff makes the blanket assertion that BSN's representation in the Agreement that it would not sell products bearing the Hooplife mark "induced the Plaintiff to act on the misrepresentation" and enter into the Agreement. Doc. 39 at 158. This fails to meet the Rule 9(b) standard of specificity. *See Dorsey*, 540 F.3d at 339 ("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b).") (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)).

First, Plaintiff's attempts to hold Varsity liable for fraudulent inducement and representation merely under an agency theory fails for the reasons set out *supra*. *See* Doc. 39 at 156 (alleging merely that Varsity is "the responsible party for the actions of BSN Sports"); Doc. 39 at 158 (baldly alleging without any factual support that Varsity "clearly knew that [BSN] had no intention of ceasing the sale of items bearing the Plaintiff's 'Hooplife' mark(s)").

Next, Plaintiff wholly fails to identify any actual statements—fraudulent or otherwise—made by Varsity, Blumenfeld, or Garcia. He contends only that Garcia "fraudulently signed" the Agreement on behalf of BSN; fraudulently represented himself as an employee of BSN; and "willfully and knowingly and personally participated" in unspecified fraudulent activities, Doc. 39 at 161-63, 182, and that Blumenfeld is liable for fraudulent misrepresentation and fraudulent inducement because he allegedly "authoriz[ed] and empower[ed] the infringing activity" and "authoriz[ed] and empower[ed] Garcia" during the negotiations. Doc. 39 at 177. *See Dorsey*, 540 F.3d at 339 ("The plaintiffs must set forth *specific facts* supporting an inference of fraud.")

(emphasis in original) (quoting *Melder*, 27 F.3d at 1102); *MLM Express Courier & Freight Serv. LLC*, No. 3:23-CV-0368-G, 2023 WL 3313592, at *4 (N.D. Tex. May 5, 2023) (Fish, J.) (dismissing fraud claims because plaintiff failed to identify any specific misrepresentation made by the defendants).

Further, Plaintiff does not adequately allege how Garcia's execution of the Agreement and Blumenfeld's alleged oversight during negotiations and execution of the Agreement constitute fraudulent misrepresentations. *See Scott*, 2021 WL 4851852, at *8 (dismissing fraudulent inducement and intentional misrepresentation claims because, among other reasons, plaintiff failed "to sufficiently explain how such a statement constitute[d] a misrepresentation"). Again, these claims appear to be based solely on the alleged failure of BSN to comply with the terms of the Agreement after it was executed, and not on any actions on the part of Garcia and Blumenfeld at the time of its negotiation or execution.

Thus, Plaintiff's fraud-based claims against all Defendants should be **DISMISSED** for failure to comply with Rule 9(b).

### C. Plaintiff's Trademark Infringement Claims Against Varsity (Counts VIII-X)[3] and Blumenfeld (Count II) Should Be Dismissed Because Defendants Did Not Engage in Infringing Behavior.

Defendants also move to dismiss Plaintiff's claims for trademark infringement under the Lanham Act, false designation of origin, and Texas common law trademark infringement. In sum, Defendant argues that these claims fail because Plaintiff alleges that BSN, not Varsity, engaged in the infringing behavior. Doc. 42 at 27-28. The Court agrees.

---

[3] Defendants correctly note that Count XII against Varsity "appears to be another claim for trademark infringement" although referred to as "Violation of Rights 15 U.S.C. § 1114" and "Violation of Rights." Doc. 42 at 14 n.4; Doc. 39 at 3, 172.

The Lanham Act governs Plaintiff's trademark claims. 15 U.S.C. §§ 1051-72; *see Magee v. Nike Inc.*, No. 3:21-CV-1726-G-BT, 2023 WL 3357594, at *3 (N.D. Tex. Apr. 24, 2023) (Rutherford, J.) ("The standards for analyzing trademark infringement under the Lanham Act, trademark infringement under Texas common law, and false designation of origin are identical."), *adopted by* 2023 WL 3362607 (May 10, 2023) (Fish, J.). To succeed on a trademark infringement claim under the Lanham Act, a plaintiff must show ownership of a legally protectable mark and then establish infringement of the mark. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

> The Lanham Act provides a cause of action for infringement where one uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.

*Id.* (cleaned up).

Plaintiff wholly fails to state infringement claims because he simply fails to allege any infringing actions by Defendants. Plaintiff asserts that Varsity and Blumenfeld were "connected or affiliated in some way" with the infringement of Plaintiff's alleged trademark. Doc. 39 at 169. As explained *supra*, Plaintiff cannot hold Varsity liable for the acts of BSN under an alter ego theory, and therefore, his trademark infringement claims fail. *See Bulot v. Welch*, No. 15-1158, 2016 WL 3365354, at *5 (E.D. La. June 16, 2016) (holding that plaintiff could not maintain trademark infringement claims when it failed to prove that defendants did not directly sell the products at issue and that alter ego liability was appropriate). Because Plaintiff does not allege that Varsity or Blumenfeld—rather than BSN—engaged in infringing behavior, Plaintiff's claims for direct trademark infringement, false designation of origin, and common law infringement against Varsity and Blumenfeld fail.

### D. Plaintiff Does Not State Claims for Contributory Infringement Against Varsity (Count XI) or Blumenfeld (Count III).[4]

Defendants correctly argue for dismissal of Plaintiff's contributory trademark claims because he fails to allege that Varsity or Blumenfeld intentionally caused or knowingly facilitated any alleged infringement.  Doc. 42 at 28.

"A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes, or materially contributes to infringing conduct of another." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (cleaned up).  Thus, if one has reason to know that an "affiliate is directly infringing on a trademark and does not 'make reasonable efforts to stop the practice,' it may be held liable for contributory infringement." *Magee*, 2023 WL 3357594, at *5 (quoting *Eclipse Aesthetics LLC v. Regenlab USA, LLC*, No. 3:15-CV-3748-M, 2016 WL 4207993, at *3 (N.D. Tex. Aug. 10, 2016) (Lynn, C.J.)).

Even construing Plaintiff's amended complaint liberally, he fails to state a claim for contributory infringement related to BSN's alleged direct infringement.  Plaintiff makes no cogent allegation that Varsity somehow had knowledge of any alleged infringement of his Hooplife trademark by producing any infringing goods, facilitating the distribution of the infringing goods, or supplying any infringing goods to BSN.  *See Magee*, 2023 WL 3357594, at

---

[4] Although Plaintiff labels his claim as "contributory negligence," the Court liberally construes his amended complaint as also setting forth a vicarious liability theory of liability to support his attempt to hold Varsity and Blumenfeld liable for BSN's alleged infringement.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers"); *Magee*, 2023 WL 3357594, at *4 (stating that vicarious liability based on agency principles is a theory of secondary liability for trademark infringement).  However, this theory fails as Plaintiff merely makes vague references to the existence of a partnership without any factual support.  Doc. 39 at 131-33, 167; *Magee*, 2023 WL 3357594, at *6 (dismissing vicarious liability for trademark infringement claim because Plaintiff failed to establish an agency relationship or that defendant could "control the actions of or contractually bind" the infringing party).  Accordingly, to the extent Plaintiff asserts a vicarious liability theory, his claims fail.

*6 (dismissing contributory trademark infringement claim because Plaintiff merely made "bald assertions" about defendant's knowledge of infringing activities).  Rather, Plaintiff avers only that Varsity, while "in complete control of and dominating BSN Sports while in partnership and under contract with New Balance," produced hundreds of products adorned with his Hooplife mark.  Doc. 39 at 170-71.  In support of these allegations, Plaintiff attaches to his amended complaint images of a BSN store, not of Varsity or any of its employees, selling Hooplife-branded apparel.  Doc. 39 at 221, 239; see United States ex rel. Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 379 (5th Cir. 2003) ("In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint . . . .").  In sum, Plaintiff makes no allegation that Varsity itself engaged in any activity that would qualify as contributory trademark infringement.

Plaintiff also alleges that Blumenfeld contributed to the alleged infringement because he "willingly authoriz[ed], over[saw] and . . . directly control[ed] the operations and actions of Varsity" while doing business as BSN.  Doc. 39 at 179.  Without more, such conclusory allegations do not suffice to withstand a Rule 12(b)(6) motion.  Magee, 2023 WL 3357594, at *6.  Therefore, Plaintiff's contributory infringement claims against both Varsity and Blumenfeld should be **DISMISSED**.

### E. Plaintiff Does Not Assert Viable Claims for Unfair Competition Against Varsity (Count XIII) or Blumenfeld (Count IV).

Although not clear, Plaintiff appears to assert his unfair competition claims under 15 U.S.C. § 45 and 18 U.S.C. § 2320(a).  See Doc. 39 at 1 (listing as a cause of action "Unfair Competition 15 U.S.C. § 45"); Doc. 43 at 31 (agreeing "that like the counterfeit claim [under] 18 U.S.C. 2320," the claim for unfair competition against Varsity under 15 U.S.C § 45 should be dismissed).  As Defendants correctly argue and Plaintiff concedes, these statutes provide no

private right of action.  Doc. 43 at 31; *see, e.g.*, *Cranfill v. Scott & Fetzer Co.*, 752 F. Supp. 732, 734 (E.D. Tex. 1990) ("It is well settled law that no such implied private right of action [under 15 U.S.C. § 45] exists."); *GESPA Nicaragua, S.A. v. Inabata Europe GmbH*, No. EP-17-CV-306-PRM, 2018 WL 6220175, at *7 (W.D. Tex. July 27, 2018) ("[A plaintiff alleging claims under 18 U.S.C. § 2320] does not have standing to institute a federal criminal prosecution or any power to enforce a criminal statute.").

To the extent Plaintiff bases his unfair competition claims on some other theory, the Court is under no obligation to scour his 189-page amended complaint searching for a valid legal claim.  *See United States v. del Carpio Fescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("[J]udges are not like pigs, hunting for truffles buried in the record.") (cleaned up).  Therefore, because Plaintiff's unfair competition claims fail to assert any legal basis for relief, they should be **DISMISSED**.

## IV. LEAVE TO AMEND

"Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998).  However, in determining whether to grant leave to amend, a court should consider "prejudice to the opposing party, undue delay, repeated failure to cure deficiencies with prior amendment, bad faith, dilatory motive and futility of amendment." *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982).

Here, based on the legal theories and facts Plaintiff asserts in his 189-page amended complaint, the Court concludes that he cannot state a plausible legal claim for breach of contract. In addition, the Court notes that Plaintiff has unsuccessfully asserted similar claims for trademark infringement and unfair competition in the instant case and other matters.  Doc. 42 at

8-12 (detailing two cases previously filed by Plaintiff). The Court is not required to grant leave to amend "if the plaintiff has already pleaded his 'best case,'" as would appear to be the circumstances here. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Allowing another amendment on these claims under these circumstances would be futile and cause needless delay.[5] Therefore, Plaintiff's claims of breach of contract (Counts I-V against Varsity), trademark infringement (Counts VIII-XII against Varsity and Counts II-III against Blumenfeld), and unfair competition (Count XIII against Varsity and Count IV against Blumenfeld) should be **DISMISSED WITH PREJUDICE**.

However, the Court finds that Plaintiff should be granted leave to amend his claims of fraudulent inducement and fraudulent misrepresentation (Counts VI-VII against Varsity, Count I against Blumenfeld, and Count I against Garcia), as he has not previously asserted these claims or been granted an opportunity to amend them. Thus, Plaintiff should be given the opportunity to cure the defects in his fraudulent inducement and fraudulent misrepresentation claims, if possible. Accordingly, Plaintiff's claims of fraudulent inducement and fraudulent misrepresentation should be **DISMISSED WITHOUT PREJUDICE**.

## V. CONCLUSION

For the foregoing reasons, Defendants *Varsity Brand Holding Co. LLC, Adam Blumenfeld, and Jerry Garcia's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice*, Doc. 42, should be **GRANTED**. Plaintiff's claims of breach of contract (Counts I-V against Varsity), trademark infringement (Counts VIII-XII against Varsity and Counts II-III

---

[5]Notwithstanding the Court's finding regarding the futility of granting leave to amend as to Plaintiff's breach of contract, trademark infringement, and unfair competition claims, the 14-day objection period attendant to this Recommendation will provide ample opportunity for Plaintiff to specify facts, if any, that can operate to cure the deficiencies in the statement of those claims that are outlined herein.

16

against Blumenfeld), and unfair competition (Count XIII against Varsity and Count IV against Blumenfeld) should be **DISMISSED WITH PREJUDICE**. Plaintiff's claims of fraudulent inducement and fraudulent misrepresentation (Counts VI-VII against Varsity, Count I against Blumenfeld, and Count I against Garcia) should be **DISMISSED WITHOUT PREJUDICE**, and Plaintiff should be granted a reasonable period to amend these claims to cure the deficiencies outlined here, if possible.

      **SO RECOMMENDED** on August 8, 2025.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).